FILED

December 22, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 3:06 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| JOHN GARRARD, | ) | Docket No. 2015-06-0648 |
| Employee, | ) | |
| v. | ) | State File No. 201587484 |
| MECHANICAL COMPONENTS OF | ) | |
| TENNESSEE, | ) | Judge Joshua Davis Baker |
| Employer, | ) | |
| And | ) | |
| CRUM AND FOSTER, | ) | |
| Insurance Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER GRANTING IN PART AND DENYING IN PART MEDICAL BENEFITS

This matter came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the employee, John Garrard, pursuant to Tennessee Code Annotated section 50-6-239 (2014). This matter concerns an accepted work-related claim. The present focus of this case is whether the employer, Mechanical Components of Tennessee (MCT), must provide treatment for Mr. Garrard's hand and wrist conditions in addition to medical care provided for other injuries related to the workplace accident. Accordingly, the central legal issue is whether Mr. Garrard is likely to prevail at a hearing on the merits in proving the need for treatment of his hand and wrist conditions is causally related to the workplace injury. For the reasons set forth below, the Court finds Mr. Garrard is likely to prevail at hearing on the merits in proving entitlement to medical benefits for cervical pain and hand tingling related to his workplace injury. The Court finds Mr. Garrard is unlikely to prevail at a hearing on the merits in providing entitlement to medical benefits for his alleged wrist injury.[1]

## History of Claim

Mr. Garrard is a fifty-three-year-old resident of Robertson County, Tennessee. On November 19, 2014, around 6:00 p.m., while working second shift on the MTC production floor, an employee driving a tow motor crashed into Mr. Garrard's

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

workstation. Mr. Garrard avoided being hit as he had stepped out of his workstation just before the collision. Mr. Garrard claims he slipped and fell when the collision occurred.

Mr. Garrard testified he told his supervisor about the incident immediately after it occurred, but the supervisor did not fill out an accident report. When his shift ended, however, Mr. Garrard told the supervisor that his neck had started hurting from where he "jumped out the way and slipped and fell." At that time, the supervisor filled out an incident investigation report and provided the following description of the accident: "While running AL20, an employee on the train hit the machine. John states machine did not hit him, but it startled him. He is stating by the end of the shift his neck had tensed up." (Ex. 4.) The incident report does not show that Mr. Garrard reported falling down.

MCT provided Mr. Garrard a panel of medical providers from which he chose Tristar Portland ER. Providers at Tristar diagnosed Mr. Garrard with a neck strain and released him to return to regular duty work. (Ex. 1, Vol. 1 at 3-7.) Mr. Garrard returned to Tristar on November 24, 2014, complaining of continued neck pain. Tristar instructed Mr. Garrard to use anti-inflammatory medication and excused him from work until November 25, 2014. *Id.* at 11. None of the records from these visits show that Mr. Garrard complained of falling down during a work-related accident.

On January 5, 2015, Mr. Garrard visited his primary care provider, Brandi Weber, a nurse practitioner. *Id.* at 109. According to the treatment notes, Mr. Garrard told NP Weber he suffered from persistent, moderate to severe, shoulder pain. He also complained that his finger "is going numb and [he] thinks it's coming from his shoulder." *Id.* He returned to NP Weber's office again in February and March 2016 complaining of similar shoulder pain and finger numbness. *Id.* at 115, 120. Again, none of these records shows that Mr. Garrrard complained of falling down during a work accident.

On February 13, 2015, Mr. Garrard returned to Tristar. The medical notes indicated that Mr. Garrard complained of "left neck pain which radiate [sic] to his left shoulder and down his left arm with associated paresthesias [sic] in the left index finger and thumb." *Id.* at 17. Mr. Garrard stated the pain began when he injured his neck and left shoulder, "when he jumped out of the way of a tow motor." *Id.*

In addition to this statement Mr. Garrard also told NP Weber that he thought he hurt his back and shoulder when he "almost fell." *Id.* at 132. When questioned about this at the hearing, Mr. Garrard said the discussion concerned another incident where he slipped in the snow.

MCT provided Mr. Garrard a panel of spine specialists to examine the cause of his radiating pain, paresthesia and numbness. He selected Dr. Jason R. Hubbard. Dr. Hubbard believed that his symptoms suggested a C6 radiculopathy. *Id.* at 33. He ordered a MRI and CT myelogram of Mr. Garrard's cervical spine to determine the cause of the

symptoms. The MRI showed "potential encroachment on the exiting left C7 nerve root." *Id*. at 34. The CT myelogram revealed "possible left foraminal disc protrusion impinging onto the emerging left C7 nerve root. The central canal is not compromised." *Id*. at 35.

On July 17, 2015, Dr. Hubbard placed Mr. Garrard at maximum medical improvement. Dr. Hubbard also opined that Mr. Garrard retained no permanent impairment as a result of the workplace accident and returned him to work without restrictions. He included the following in his treatment notes:

> He has been doing physical therapy for his neck. Unfortunately this has not given him much relief. He has an MRI that is normal, he has a CT that is normal. From a neurological standpoint, I do not have much to offer him. I would simply recommend continued pain management. He is already in pain management with Dr. Whitehouse.

*Id*. at 39-40, 44. Concerning causation, Dr. Hubbard opined that the November 14, 2014 work-related incident was the major contributing cause of Mr. Garrard's "cervical pain and tingling in in his hands." *Id*. at 42. Specifically, Dr. Hubbard opined that the workplace incident was ninety percent the cause of this condition. *Id*. When asked whether the condition would require further treatment, Dr. Hubbard checked "yes" and wrote "symptomatic pain management."[2] *Id*.

In addition to the opinions on causation, Dr. Hubbard wrote the following in his July 17, 2015 treatment notes:

> [Mr. Garrard's] biggest complaint today is pain in his wrist. This is a new complaint. It is not one that he has told me [about] in the past. I did [sic] not think it is related to his previous injuries, but if this continues I would recommend he get [an] evaluation by an orthopedic hand doctor to see what may be going on.

*Id*. At trial, Mr. Garrard maintained that he told Dr. Hubbard about the pain in his wrist prior to this appointment.

Mr. Garrard testified that he continued to experience problems with his hands and wrist. He complained that his hands often became numb during the night making it difficult for him to sleep. On May 12, 2015, Mr. Garrard sought treatment on his own from Dr. N.K. Singh. The treatment notes indicated Mr. Garrard told Dr. Singh that he fell down onto his right and left wrists and hands while jumping out of the way of a tow motor. (Ex. 3 at 4.) Dr. Singh diagnosed arthralgia and paresthesia in both hands, and possible bilateral carpal tunnel syndrome. *Id*. Dr. Singh did not provide an opinion in

---

[2] Dr. Hubbard made other notations on the page that are illegible in the copy provided to the Court.

the medical notes on whether Mr. Garrard's alleged fall at work caused these conditions. At the hearing, however, Mr. Garrard testified, without objection, that Dr. Singh told him he could have injured his wrist when he fell.

Dr. Singh referred Mr. Garrard to Dr. Donald Lee for a surgical consultation. Dr. Lee performed a preliminary examination but declined to continue the examination upon learning that Mr. Garrard believed treatment should be covered under workers' compensation. (Ex. 3 at 1.) He told Mr. Garrard his employer would need to approve payment under workers' compensation before going forward and encouraged Mr. Garrard to return upon receiving approval for treatment under workers' compensation. *Id*.

Medical records show that prior to the workplace incident, Mr. Garrard received pain management treatment for pain resulting from an automobile accident from Whitehouse Pain Institute (WPI) and North Regional Pain Management (NRPM). (Ex. 1, Vol. 2 at 164-244.) The medical records from NRPM indicated Mr. Garrard complained of pain in his left shoulder and lower back as well as weakness, numbness and tingling in his leg and between his fingers prior to the workplace incident. *Id*. at 216, 232, 239. When questioned about this report, Mr. Garrard denied complaining of tingling in his fingers to NRPM.

Mr. Garrard filed a Petition for Benefit Determination seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Mr. Garrard filed a Request for Expedited Hearing, and this Court heard the matter on December 7, 2015. At the Expedited Hearing, Mr. Garrard argued that his hand injury arose out of his November 19, 2014 workplace accident. MCT argued that Mr. Garrard failed to carry his burden of proving his wrist injury arose out of the accident.

**Findings of Fact and Conclusions of Law**

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. Tenn. Code Ann. § 50-6-239(c)(6); *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[3] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp.

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

4

App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

MCT accepted Mr. Garrard's neck injury claim and provided medical benefits; only the extent of those benefits is at issue. Mr. Garrard maintains steadfastly that he fell, landing on his hands, during the November 19, 2014 workplace incident. Accordingly, he seeks additional medical attention for a wrist and a hand injury which he claims resulted from the incident. MTC claims Mr. Garrard did not fall to the ground and argues that it should not have to provide medical benefits for the wrist and hand conditions. The Court gives more credence to the documentary evidence.

An accident report completed just after Mr. Garrard's shift ended on the day of the accident does not mention Mr. Garrard reporting a fall when the tow motor struck his workstation. Instead, the report states the tow motor "startled him." Similarly, when Mr. Garrard sought treatment for neck and left-shoulder pain at Tristar on February 13, 2015, Mr. Garrard stated the pain began, "when he jumped out of the way of a tow motor." *Id*. Again, Mr. Garrard never stated he fell to ground. Mr. Garrard also visited NP Weber on May 6, 2015. At this visit Mr. Garrard described injuring his shoulder and back when he "almost fell." Mr. Garrard, however, denied the comment concerned the workplace incident. Instead, he claimed to have been speaking about an incident where he slipped in the snow.

These facts aside, however, the most troubling aspect of Mr. Garrard's testimony insisting that he fell during the November 19, 2014 incident is the absence of any statement attributed to Mr. Garrard where he reported falling down. In fact, Mr. Garrard apparently never told anyone he fell down until he visited Dr. Singh on May 12, 2015. By that time, physicians at the ER, Dr. Hubbard and NP Weber had treated him on multiple occasions. In all those visits, none of the records shows that Mr. Garrard claimed to have fallen down. Accordingly, the Court finds that Mr. Garrard did not fall down during the November 19, 2014 workplace incident.

The Court now turns to Mr. Garrard's complaints of wrist pain. In addition to the dearth of information regarding Mr. Garrard's alleged fall, the medical records also contain no complaints of wrist pain until July 17, 2015. Upon hearing Mr. Garrard's complaints of wrist pain, Dr. Hubbard stated that he did not think the wrist pain is related to the workplace accident.

Mr. Garrard bears the burden of proof in these proceedings. Except in "the most obvious, simple and routine cases," a workers' compensation claimant must establish by expert medical testimony that he or she is injured and that there exists a causal relationship between the injury and the claimant's employment activity. *Wheetley v. State*, No. M2013-01707-WC-R3-WC, 2014 Tenn. LEXIS 476, at *5 (Tenn. Workers' Comp. Panel June 25, 2014) (citing *Excel Polymers, LLC v. Broyles*, 302 S.W.3d 268, 274 (Tenn. 2009); *Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008)). Normally, Mr. Garrard would not need to prove medical causation to establish eligibility for a particular medical benefit at the expedited hearing stage. *See McCord*, *supra*. Under these circumstances, however, where the authorized treating doctor "does not think" his wrist condition is casually related to the workplace accident, Mr. Garrard must present some countervailing evidence to contradict Dr. Hubbard's opinion. *See* Tenn. Code Ann. § 50-6-102(13)(E) (2014) ("The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence.").

The only other evidence concerning Mr. Garrard's wrist pain complaints came from the records of Drs. Singh and Lee. Neither doctor, however, opined a causal relationship between Mr. Garrard's work and his wrist pain. At the hearing, Mr. Garrard claimed that either Dr. Singh or Dr. Lee told him that falling on his hand could have caused his wrist pain. Of course, this Court has already determined that Mr. Garrard did not fall on his hand during the workplace incident, so Dr. Lee's alleged statement carries no weight with this Court. Accordingly, Mr. Garrard has not rebutted the presumption of correctness attached to Dr. Hubbard's causation opinion. For this reason, the Court finds he is unlikely to prevail at a hearing on the merits concerning his request for treatment of wrist pain.

The final issue for consideration is whether MCT must provide Mr. Garrard treatment for cervical pain and tingling in his hands. Before addressing this issue, the Court notes the lack of credibility attached to Mr. Garrard's testimony. Furthermore, as recounted in the claim history portion of this order, the Court is mindful of Mr. Garrard's complaints of "finger tingling" predating the workplace incident. These facts and the credibility determination aside, the Court is faced with the statements in Dr. Hubbard's medical records and his response to the causation letter submitted by the nurse case manager.

Dr. Hubbard placed Mr. Garrard at maximum medical improvement on July 17, 2015, and opined he retained no permanent impairment. He also noted that Mr. Garrard had a normal MRI and CT myelogram. Concerning causation of the cervical pain and hand tingling, however, Dr. Hubbard wrote "by history his work injury is the main etiology." Percentage wise, Dr. Hubbard attributed ninety percent of the cause of Mr.

6

Garrard's cervical pain and hand tingling to the workplace incident. Further, Dr. Hubbard knew Mr. Garrard complained of cervical pain and finger tingling before November 19, 2014, because the nurse case manager informed him of this in her letter requesting a causation opinion.

Despite this knowledge, Dr. Hubbard opined that a causal relationship existed between Mr. Garrard's cervical pain, finger tingling and the workplace accident. As the authorized treating physician, his opinion carries a presumption of correctness. *See* Tenn. Code Ann. § 50-6-102(13)(E) (2014). Thus, the Court finds, based on the evidence before it at this time, that Mr. Garrard is likely to prevail at a hearing on the merits in proving a causal relationship between his cervical pain, hand tingling and the workplace accident.

Tennessee law requires an employer to provide, "free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter[.]" Tenn. Code Ann. § 50-6-204(a)(l)(A) (2014). Further, any care prescribed by the authorized treating physician will be presumed to be reasonable and necessary for treatment of the employee's work-related injury. *See Russell v. Genesco, Inc.*, 651 S.W.2d 206, 211 (Tenn. 1983). When asked whether Mr. Garrard's cervical pain and finger tingling would require further treatment, Dr. Hubbard checked "yes" on the causation letter and wrote "symptomatic pain management" in the area below that check mark. He also included the following in his treatment notes: "From a neurological standpoint, I do not have much to offer him. I would simply recommend continued pain management."

The Court finds that Dr. Hubbard recommended pain management treatment for Mr. Garrard's cervical pain and finger tingling. This recommendation is presumed to be reasonable and necessary. The Workers' Compensation Law provides the following concerning pain management treatment:

> (j)(1) If a treating physician determines that pain is persisting for an injured or disabled employee beyond an expected period for healing, the treating physician may either prescribe, if the physician is a qualified physician as defined in subdivision (j)(2)(B), or refer, such injured or disabled employee for pain management encompassing pharmacological, nonpharmacological and other approaches to manage chronic pain.
>
> > (2)(A) In the event that a treating physician refers an injured or disabled employee for pain management, the employee is entitled to a panel of qualified physicians as provided in subdivision (a)(4)[.]

Tenn. Code Ann. § 50-6-204(j) (2014).

7

Dr. Hubbard placed Mr. Garrard at maximum medical improvement and then recommended further pain management. While not stated in the specific statutory terms, the Court finds that this decision satisfies section 50-6-204(j)(1)'s requirement that the authorized treating physician determine that pain is persisting beyond the expected period for healing. The Court, therefore, finds MCT must provide Mr. Garrard a panel of pain management doctors that meets the requirements of Tennessee Code Annotated section 50-6-204(j)(2) for treatment of his cervical pain and finger tingling.

The Court appreciates that Mr. Garrard is already in pain management and realizes this will likely present some logistical problems because patients are generally not allowed to treat with more than one pain management doctor. Under the circumstances, however, the Court sees no other option.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Garrard's claim for medical benefits for his wrist pain against Mechanical Components of Tennessee and its workers' compensation carrier is denied at this time.

2. Mechanical Components of Tennessee shall provide Mr. Garrard with a panel of pain management physicians for treatment of his cervical pain and hand tingling.

3. This matter is set for an Initial (Scheduling) Hearing on January 26, 2016, 2015, at 9:00 a.m. (CST).

**ENTERED this the 22nd day of December, 2015.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Baker, Court of Workers' Compensation Claims. You must call (615) 741-2113 or toll-free at (855) 874-0474 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

8

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if

any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:

1. Medical records (2 volumes)
2. Affidavit of John Garrard Jr.
3. Additional medical records
4. Incident investigation report

Technical record:[4]

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Letter to Amanda Terry from counsel for Mechanical Components of Tennessee

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 22nd day of December, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| John Garrard, Jr. | X | | | 1011 Fifth Ave. W. Springfield, Tennessee 37172 |
| James Tucker | | | X | jtucker@manierherod.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

12